Good morning, your honors. My name is Sean Bay Sampson, and I am the attorney for the debtor William McIntyre and Gail Johnson McIntyre. I'd like to point out that Ms. McIntyre is in the courtroom today. Ms. Johnson McIntyre is in the courtroom today. Could you raise your voice just a little? Sure. I hope so. And we are here obviously appealing the granting of a summary judgment motion from a bankruptcy court judgment. Let me ask you some factual questions, Mr. Sean Bay. Mr. Sampson, I mean. Thank you. When does the record show that you acquired an equitable lien for $175,000 on this property? It was at the signing of a retainer agreement. Pardon me. Which would have been. Maybe I can rephrase my question. Can you give me a record citation to the excerpts of record or other document which is before us as to when you acquired the equitable lien? I can. It would be in. Is that document recorded? No, the document is not recorded. All right. No, I didn't ask for the recordation. There has to be some evidence that you actually got an equitable lien. Yes. What is the evidence that you got it and when? I'll tell you specifically what it is. In responses to interrogatories, Gail Johnson McIntyre specifically responds to several questions where she clearly states that she gave me an equitable lien in the property in exchange for legal services. Does she tell when she gave it to you other than by dating the answer to interrogatory? Yes. April of 2000, March or April of 2005. Okay. And that's her answer to interrogatories which are part of the record. Exactly. All right. She may also. There is a declaration also in the record that she may repeat that in that declaration as well. And the declaration was filed on what type of a motion? I want to say it was filed probably in the appeal, appeal to the district court. In the appeal from the bankruptcy court to the federal district court? Right. That was 2008. That's when the appeal was filed, but the lien was actually granted in 2005. Is there any other evidence, collateral evidence, corroboration evidence, that this lien existed besides Mrs. McIntyre's answers to interrogatories? Well, there is collateral in that. There is a retainer agreement that she actually did sign that says. Is the retainer agreement in evidence? I mean, part of the record. The retainer agreement is not in evidence. Then why mention it? Well, I was just responding to the question. I'm concentrating on what the record shows. Okay. I'll cross that out. Tell me if there's anything else that corroborates the granting of your equitable lien in March or April 2005 other than the statement under oath by Mrs. McIntyre in response to interrogatories which you cited. I believe William McIntyre, who also granted me a lien in the property, a year later in 2006 when I began representing him. And I believe he might state it in a declaration as well. But I don't have this specific site memorized at this point in time. But Mr. McIntyre, who you represented, also gave you a lien in his interest in the property. Correct. Did that enlarge the lien up to $175,000, or was it $175,000 on Mrs. McIntyre's interest? Well, it would have enlarged the lien, but there was some overlap in the work that was done. Because her case, I began representing her case first, and so there's a lot of work that was done on her case. And so it would be accredited or apportioned to her bill, if you will. He came along and piggybacked on that. And as it turns out, she was not – she was initially not a party to his case. Because when I began representing him in State court, when I began representing him in State court, basically most of what went on in State court would be accredited to him. Let me ask another question. With respect to what's in the record before this court, is there any evidence that you changed your position in reliance on that equitable lien by providing services to the McIntyres that you would not otherwise have provided had the equitable lien not existed? Oh, absolutely. Where is the evidence of that? So there's no specific evidence in the record. No, that's what I'm getting at. Oh, okay. It's just a reasonable conclusion based on the facts. From what reason? Is there any evidence that you did perform any services in the record? Excuse me? Is there any evidence that you performed any services in the record? Oh, yes. Both my clients testify in declarations that I was their attorney and represented them in State court throughout that action. Okay. Have you ever diagrammed this case? I have in my head. Well, that, you know, one thing I remember from law school, in the old days when they'd take the, I think it was called the LARC from San Francisco to L.A., a partner got on with an associate and asked him if he'd brought the authorities, the book, you know. And he said, no, no. He said, I have it all in my head. He said, well, he said, next time leave your head at the office and bring the authorities. Okay. Mr. Sampson, is your attorney's lien intertwined with your lis pendens notice? No. I'm not quite sure what you mean with the lis pendens notice. Well, my understanding of lis pendens is you're giving notice to members of the public that you claim an interest in the real estate. I will say this. Am I correct? Yeah, you're correct. Okay. And when was the lis pendens filed? The lis pendens was in April 4th of 2005. But the lis pendens said there was lis litigation pendens pending. Correct. Between Mr. and Mrs. McIntyre for the distribution of community property assets, which included the real property in this case. Am I correct? It wasn't quite that detailed, but basically lis pendens says that there is pending litigation. In that case, it was the divorce and that she did, in fact, have an interest in that house. Yes. But it didn't say, and correct me if I'm wrong, it didn't make any mention that Chambay Sampson had any interest in this property. That's true. Right. But it did show that I was her attorney of record and that I did record the lis pendens. And you asked for the lis pendens to be sent back to you after recordation, which it was. Which it was. And, again, to answer your earlier question, there is evidence right there that I represented her at that time. And that was before, on April 4th, none of us had any knowledge of any sale going on or any mortgage being taken out by the neighbor, Ronnie Breaux. Are you saying that that lis pendens, which has your name, that that somehow gives you a lien on this property? No. I have a retainer's agreement. And this and my client both yelled at me. A retainer's agreement has been recorded. It doesn't give notice to anyone unless they actually knew about it. Right. And he's got a retainer's agreement, and that gives him a lien on this property. I understand your point, but obviously you can't have a lien without it being recorded. Contractual liens exist all the time. So the lien exists, and the lien is there, and it's a contractual lien. There is a case which I believe was unpublished that I cited. You don't have the piece of paper that gives you the lien, huh? No, because it's part of a confidential retainer agreement. But I would have no problem disclosing that or turning it over if, you know, if it were warranted. I don't believe that. But your adversary might have a little bit of a problem in allowing you to amplify the record of something which was not before the trial court. At this point, yes. But I'd like to say I don't think you need to even be addressing this issue because I believe the case is resolved on the law, on the law of equities. And the law of equities, I think, is pretty clear. They're not entitled to any equitable lien. And the reason for that, obviously, I mean, there are three reasons. Specifically, the law of equities requires the party getting the lien to be entitled to the lien. And to be entitled to the lien here, the appellee would have had to have provided a benefit to my clients. He sure didn't. 200,000 benefits. No, he didn't. By paying off a loan that your client had on the property. No, he didn't. He loaned the money to the neighbor, and the neighbor paid off the loan in order to defraud my clients. Well, but the net was that your client had a debt of $200,000 due to a refinancing which was discharged by the payment of $200,000. Yeah. But unfortunately, in the law of equities, in order for the lender in this case to be able to claim that he provided that benefit, he would have to have a direct link. He would have had to. He would have had. So long as he parted with the money in good faith and effected a benefit to your client. No. Are you saying he's a volunteer? Yes, he's a volunteer. There is not a single case that allows you to trace, to draw the conclusion that you made. If person A loans money to person B, and person B goes and pays somebody off. Mr. Sampson, didn't Judge Collier of the District Court and the Bankruptcy Court both say the land was improved in Jones' controls? The land was improved. The equitable lien goes with the land, not with the party. Right, and that was fundamentally in error, because if you read the Jones case, Jones' case is easily distinguishable from the case here. First of all, in the Jones case, the lender loaned money to build, to actually develop the property, to do something physically to the land. So the land's value was actually enhanced. There's been no enhancement in the value of the land here. So that was the first distinction. The second distinction is Jones v. Sacramento is a lien priority case, and it dealt with defective deeds. In other words, the deeds were properly executed by someone who actually had an interest in the property, and there was a mistake in the deed and a mistake in how those deeds were administered. As a matter of law, defective deeds, mistakes in deeds, can be legally recognized by the court. And so Jones, in the Jones case, the court recognized the defective deeds as having been valid, and then it apportioned the priority amongst two valid deeds of trust. And that's what the Jones case is about. Here, all the deeds are forged. These parties have no interest in the property that they can be exchanging or conveying to anybody. This is a forged deed case, and as you know, as a matter of law, forged deeds are void ab initio. The court can't recognize them under any circumstances. Mr. Sampson, it seems to me removing an encumbrance is a pretty substantial improvement to real estate. Would you disagree with that? Of course. It has zero value. It has no effect on the value of the property, removing the lien. It may have an effect on how much somebody pays for the lien or the value of the lien or how much is owed on the lien, but it has no effect on that. But absent the imposition of the equitable lien, doesn't Mr. Breaux, the purchaser, or your clients, don't they get unjustly enriched? No. You can't be unjustly enriched for a whole host of reasons that we pointed out in our brief. One, you can't circumvent and violate and frustrate other law. So you can't circumvent and violate the Family Code section 1102A, sorry, 1100C and 1102A, which mandate that when a home is used as the family home, that the home of both spouses, if it's community property, both spouses have to consent in writing to any encumbrance, to any encumbrance on the property. If the court just simply imposes a lien, they're putting an encumbrance on the property without the written consent of the homeowners. And that's a violation of their property rights. You can't do it in the state of California. You can't do it anywhere, probably. And that's just one issue. You're down to 20 seconds. Yes. Can I reserve my 20 seconds for rebuttal? Yeah, we'll give you another minute. Oh, thank you. Are there any further questions? I think this case gets decided way before we get to the lien issue, and it gets decided in our favor. It's a good bar exam question, huh? I think it's pretty one-sided in our favor. You might write the question out, and you might be able to sell it to one of these companies, you know, that make a lot of money with their big, thick books, you know, and lectures and all that. I would also like to make one more point before I do sit down. Because of the mispendants on the property, there is an automatic operation of law assumption of risk defense, which means that the lender here should have known that Gail Johnson McIntyre had an interest in the property, and if they executed any documents or made any loans based on documents that did not specifically have her signature on those documents, that it was assuming the risk that the party selling the documents was not entitled to sell it. Because under California law, both spouses must consent in writing to the sale or income of the property. And the mispendants gave the lender in this case notice that she had that community property interest in the property. And that, by operation of law, sets up an assumption of risk defense. And that should be pretty easy to follow and pretty straightforward. And even if they had provided a benefit, and even if they were entitled to the second loan. The thing is that even if he's a bona fide purchaser for value by putting up $200,000, he is not without notice. He has notice. Right. And therefore he doesn't qualify as a bona fide purchaser first duly recorded. Right. And that should be absolute here. You're past your time, I think. Thank you. Thank you. I plead the court. Imran Hyatt for American Home Mortgage Services, Inc. I think what bears repeating is one of the lower court's rulings and statements here. And it still applies today. The court's read the briefs, quite familiar with them. The lower court had this to say. This is about a relatively very straightforward, easy case. There's a lot of stuff you've thrown up. But none of them are relevant as far as I'm concerned. This is a case. They paid it off. There's no wrongdoing. Very simple. They're entitled to the lien. The attorney lien that the court has been referring to is a very different issue. No one had any notice. They're entitled to the lien tells us nothing about the rationale that the court used to arrive at that conclusion. Well, Posey said you're entitled to the lien because they part their hair on the left. Well, that would be wholly unjust. Well. But here what we're talking about. It wouldn't be wholly unjust. It would be without basis in the law. You tell me what basis in the law sustains the ruling of the court below. First of all, you're claiming that you're benefited by the California statutes regarding first recorded lien holder who paid value without notice. Right. Right. That's the basis of sustaining the district court's opinion. Right. Well, in part. Let's talk about that. No question that your antecedent of interest parted with $200,000. Right. No question that that lifted Ameriquest's trust deed note on the property and paid off a debt that would otherwise have to be paid by the McIntyres. No question about that. No question you were first duly recorded because Mr. Samson's equitable lien is still not recorded. Right. Right. Now, tell me why you didn't have notice of Mrs. McIntyre's interest in the land by the list pendants, which would require Mrs. McIntyre's signature beyond any conveyance of any interest in the land. I think the lower courts have dealt with that. And they squarely found that the notice of list pendants didn't matter because at the end of the day, what we're dealing with is an equitable subrogation or an equitable lien. And in that instance. You're backing away from California's recordation statute as a basis for your win. And you're saying, no, the court below found that an equitable subrogation theory was the one that affected your win. I think that we did. We win both ways. And why don't we deal with one at a time? Let's talk about recordation as a basis for your victory below. OK. Let's go back a second. Why doesn't the notice of list pendants put BNC and successors in interest on notice that there is a McIntyre interest in the property and therefore any conveyance must have McIntyre, Mrs. McIntyre's signature? Well, that's part of the problem. The sale documents that we have do have Mrs. McIntyre's signature. But they're forged, aren't they? They are forged. And that's how you get to the second portion, which is why you end up with the equitable lien. And so. So then you want us to forget about the 1214, the recordation basis and get to the equitable subrogation. I agree. And I think that you get there either which way. And like I said, when you have this issue with respect to the notice of list pendants, it's merely deals with you have this. Let me suggest something else. Yes, sir. Was Mrs. McIntyre's signature at all necessary for the removal of Ameriquest's note and deed of trust? I don't follow that question. Well, when a loan is paid off. Right. The note holder is required to execute a reconveyance of the deed of trust. That's the note holder. That's Ameriquest. Right. What difference? Why are we talking about Mrs. McIntyre's signature at all? Well, I think where we're getting to, Your Honor, is the point where you have an equitable lien that was awarded to my client. Mr. Hyatt. Yes. Is a property owner's signature required to remove the deed of trust by reconveyance when a loan is paid off? Generally, yes.  Well, Mrs. McIntyre's signature may be required or may not be required. No, not generally, yes. But the trustee has a requirement to reconvey that title to Mrs. McIntyre when the note is paid off. Correct? It would. Now, what does Mrs. McIntyre's signature have to do with that? Well, it has no bearing on it. That's what I mean. There's no requirement in California that a grantee sign anything. Right? That is correct, Your Honor. Thank you. I do follow that. But where we end up getting to the situation still is that we have an equitable lien here. No matter how you skin it, Your Honor, we win it. And I think that's where it comes down to is where our client paid or his predecessor paid. What due diligence did your client exercise when they made that loan? Well, Your Honor, we had the sale documents. And as the Court noted in the record, that those sales documents indicated that Brough had an interest. But notwithstanding all of that, at the end of the day, the law is such that when we look at Cavian, we look at Jones v. Sacramento, that where one party pays off the claimant's interest, or let me read the specific site, an equitable lien may be imposed where the claimant's expenditure has benefited another's property under circumstances entitling the claimant to restitution. A specific application of the doctrine occurs when a lender advances money which benefits the land of another in mistaken reliance upon imperfect mortgage or lien upon that land. And that's what we have here. The law couldn't be clearer. Was there any title insurance obtained by your client? I'm not aware of that. What? I'm not aware of that because the sale was not completed. So we couldn't have obtained title insurance. What? Did you get a preliminary title insurance? Not that I'm aware of, no. Well, I mean, that's part of due diligence, isn't it? Well, that's part of the due diligence, Your Honor, but we're talking about here where our client ultimately paid off their mortgage. Now, what the appellant is asking for is a home free and clear. And that's what the law is. The law is where one person pays off the mortgage of another, some in substance. They're entitled to an equitable separation. We didn't come basically going off paying everyone's mortgage, and that's what plaintiff or appellant would have you believe. What's wrong with our remanding this case to the district court and saying, take testimony to see if Mr. Sampson's equitable lien really existed at all? If it did, it's earlier in time than whatever equity BNC has, and unless Mr. Sampson's interest is cut off by the recording statutes, Mr. Sampson should win. That issue is not before this Court. I think that Mr. Sampson improperly ---- It would be if we reverse. Well, it would be. But, Your Honor, I think that as we point out in our brief, the issue of the eternal lien is dropped in a footnote. Are you saying that the issue was waived because it wasn't brought up? Yes. It's only mentioned in a footnote? Yes. We have cases that say mentioning in a footnote is good enough for government work. Well, we cite cases of the opposite, but notwithstanding that, and I won't belabor the Court with those, but notwithstanding that, that lien, that whole issue has been abandoned, and the lower courts did not deal with that, nor did Mr. Sampson perfect that issue, and I believe that that would be an inherent injustice to remand on that issue at this point. Was there anything other than the answered interrogatory that he mentioned in his opening argument and the declaration that referred to the attorney's lien? No. And having created that insufficient record or created no record whatsoever with respect to that or advanced any arguments to that, it would be inherently unjust for now this Court to say, well, let's correct Mr. Sampson's failure to perfect his argument or record with respect to that and give him another bite at the apple, so to say. And notwithstanding the other issues or the deficiencies that might be raised, we don't have an opportunity to comment on those because we didn't have an opportunity to defend against that at the lower courts. Had we, we are confident we would have prevailed. That notwithstanding, that issue is not properly before this Court, nor was it properly before the lower courts, nor was it properly developed before the lower courts. Say you had a preliminary title report that disclosed all the record information. Was this money put into an escrow? As I recall, yes. The money went to the escrow, and there's undisputed that the Sampsons no longer have a mortgage and have been living in the property mortgage-free for years. And now for them to come to this Court and say they've received no benefit is just stretches for no one. Exactly right. Yeah, but I don't understand how your company could make a loan of well over, over 200,000, huh? Roughly, Your Honor. And not get a preliminary title report. Well, Your Honor, I mean, notwithstanding the preliminary title report, as Mr. Sampson agrees, would not have shown the recordation of that lien, of his $175,000 lien, which begs the question how we got here on a case where we could have been in a situation where once we do get that lien, the initial mortgage paid off. Your position is the list pendant didn't tell you anything you didn't know about the sale agreement. Mrs. McIntyre claimed to be an owner, and the list pendant says she's an owner. That's all it does. And that's what the lower court found, too, when it said, when it discussed what the list pendant said. The purpose of the list pendant under 405.20 is to give you notice, and that list pendant didn't give you notice of anything other than what this Court should have. It certainly didn't give them any notice that Mr. Sampson had a lien for $175,000. Certainly not to try and piggyback on that now is, I'm quite impressed by that argument, but nonetheless it fails. Okay. Did you diagram this, all these events? You know, I did, but I didn't bring it with me. And we did diagram the case, and I did a case analysis of it and so forth and so on, and that's what leads me to be here in front of you. It's a good thing for you that Judge Kaczynski isn't sitting on this panel. When people say they have that information but they didn't bring it with them, he excoriates the preparation. I figured it was going to be one step removed I was going to get either way. All right. Well, it might have made it a little easier to figure out all the craziness that was going on here. Yes. All the unorthodox methods of making loans and handling property and forgeries and all these other things that went on. Okay. Thank you very kindly, Your Honor. Thank you. I appreciate it.  Thank you. I appreciate it. You loosed up your time, but, you know, you got such a nice smile. I'll give you another minute. It's a good smile. It takes you a long ways. Any reason, Mr. Sampson, that is reflected in the record as to why you didn't record your equitable lien? Well, yes, and I'd like to address that because it was part of a retainer agreement, and generally lawyers don't record what's in their retainer agreement. You've taken out a, could you file the list pendants and said, I, Sean Bay Sampson, have a $175,000 lien granted to me by Mr. and Mrs. McIntyre. So watch out, folks. Don't loan any money against this property without talking to me. Well, to respond to your question, and I want to clear up some misstatements that my adversary made. First, in William McIntyre's, in his petition, his bankruptcy petition, I do believe he lists me as a creditor. So it's in the petition that I am a creditor, and this is when he filed. That petition was not recorded with the L.A. County Recorder. No, but I want, there is additional evidence that there was a lien. Secondly, we have never argued that my client didn't receive a benefit. We argued that the benefit came from Ronnie Breaux, not from the lender, because they loaned him the money. They have a loan agreement with him to pay the money back, and they have a judgment against him for the money. So he's the party who paid off our mortgage, and he would have the right to sue us to get the $205,000 back, but he wouldn't get it because he has unclean hands. In this case, the other issue I wanted to say is that Gail Johnson McIntyre didn't sign any documents conveying an interest to anybody, and it's not about the bank conveying the interest back to her. It's about who has the right. You can't gain a right to somebody's property by simply paying off the encumbrance. That would be the best fraud going. If you had a house for a million dollars and only a $200,000 mortgage on it, suppose your neighbor just bought off your mortgage and said, hey, now you owe me. That couldn't happen. Under California law, either the lender, argent mortgage, or the homeowner has to consent to even the paying off of the mortgage in order for that party to pay. Well, Ameriquest did consent to the paying off of the mortgage.  They just received the money. They were just paid off. And they didn't send it back. Well, the law says, if you read the Casa Valles case, it says it's a matter of how they acted. Did the lender act at the instance of argent mortgage? Did it act at the instance of the McIntyres? That's the only way you're entitled to get the remedy of repayment of that mortgage, is if you act at the instance of an owner of the property or the previous mortgage holder. That didn't happen. They paid this money off at the instance of Ronnie Breaux. And that's Casa Valles v. Serrano. That's another case, factually simple. There's no way they can get around it. We should prevail on that issue. Mr. Sampson, what about his argument that you waived it? You only referred to it in a footnote and, therefore, the issue's abandoned. Well, that's nonsense. The cases that he actually cited for that in his brief dealt with ñ had nothing to do with the argument he made. Well, but I'm talking about the record. Let me interrupt. I'm talking about the record. Did you not mention it except for a footnote? No. It was mentioned in the ñ we filed a motion to dismiss. We filed in the underlying cause of action, and it was mentioned in the motion to dismiss as well. But I think that Mr. Hyatt's point was on appeal, you've mentioned your interest pursuant to the so-called equitable lien that you got only in a footnote in your opening brief. Oh, well, that may be true only because we have brief limitations. But as you pointed out, that doesn't mean we waived the argument. In addition, the appeal is de novo. So we can raise these new arguments on appeal. This is a de novo review. So I don't understand ñ I don't understand the argument. Well, you didn't raise an issue because you were adhering to the court's rule and limitation on the number of words you put into a brief. Well, we raised the issue. It's in the footnote. It's in the footnote because it's a simple issue and all you ñ you know, there's not much ñ there's not much to develop with that issue. But we did raise the issue on appeal. We raised the issue in our opposition to the summary judgment at the bankruptcy court level. We raised the issue again on the following appeals. So I don't know where he came up with the argument that we ñ it's not factually true that we only raised it in this brief. But even if we had, the law says that as long as they have an opportunity to brief the argument, it's properly raised. And the cases he cited was only ñ the court denied the party the right to raise the new issue on appeal only where the other party did not have a right, did not have the opportunity to brief that issue. And they had an opportunity in their response brief to address that issue. Yeah, well ñ So it's ñ I think you're all right with that. Yeah, I think so too. And as you correctly pointed out, no due diligence. They didn't do any title searches or anything. And had they done a title search, had they gotten title insurance and done a title search, they would have discovered the list pendants that Gayle Johnson McIntyre had. And when they got documents that came before them that didn't have her signature on them, and I'm talking about the documents that were forged, and I saw the documents and they're part of the record, her signature isn't even forged on any of those records. Her signature is not on any of the forged grant deed. It's not on the deeds of trust. It's not on anything. So ñ and they have a heightened duty because they are someone in the business of lending money. So they have a heightened duty to be aware that when you're dealing with a loan on community real property ñ Who's in the house now? Gayle Johnson McIntyre is still in the house. And they had a duty to ñ you know, they're in this business. They had a duty to verify any documents that they had had the signatures of both homeowners on them. And I'm talking about the forged documents. I'm talking about the loan documents. They're the lender. They acted ñ and this, again, goes back to my point. They acted at the instance of Ronnie Grow and this escrow company, Victory Escrow. Those guys submitted to the lender forged sales documents, forged grant deeds, all kinds of forged documents. None of those documents had her signature forged on them. They only had William McIntyre's signature forged on them. And they had Ronnie Grow's signature forged on them. So that should have told them, as soon as they got the documents, they have community property and only one spouse's signature on them. That should have told them right away that they had a problem and they shouldn't have made the loan or they should have done further inquiry. Well, you're trying to get your $175,000. Oh, yes. Not more. Yeah, of course. Right. But I think if you read my brief and you go through it step by step, particularly pay attention to the reply brief, you will see that when you actually do an equitable analysis, they're not entitled to an equitable lien. Because, A, to grant the lien violates, you know, a lot of the codes that we spoke about. The other reason, of course, is that I would argue they didn't actually provide the benefit, that actually the money went to an escrow account, which means that the lender completed its obligation. They actually loaned the money to Ronnie Breaux. Once the money was gone, money went to Ronnie Breaux. My clients didn't get a dime out of this. The escrow company stole $150,000, and Ronnie Breaux got a check for $115,000. And then they paid off the mortgage on the property. So you can see how the scam or the fraud works. And if anybody looks up this case on the Internet and wants to know how to steal real property, this is how you do it. In all the statutes that we say that granting an equitable lien violates, the whole purpose of those statutes is to prevent fraud. And real estate is not the same as other forms of property. There are special rules, statute of frauds that apply. We've given you a minute, and now it's seven minutes and 38 seconds. Thank you, and I do appreciate that. But I would urge you to go through my reply brief, follow the arguments I think are appropriate. Okay. Thank you, Your Honor. Have a drink of water. All right. Where are you going? Excuse me? Where are you going? I'm going to be very simple and very quick. Wait a minute. You, you, you. Thank you, Your Honor. You know. I've got to give it a shot. Yeah, give it a shot. Well, this case is a little crazy anyway. So, we'll move on. You can have a drink and leave the property for someone else, unless you've got Liz Pendence on that chair. Thank you, Your Honor. It's in the drawer. Okay. See you later.
judges: Pratt, Pregerson, Bea